2012 VT 56

**In re Richard A. SCHOLES, Esq.**

[54 A.3d 520]

No. 12-205

¶ 1. July 10, 2012. Upon review of the hearing panel decision in the above-captioned matter, the Court concludes as follows: The decision presents a well reasoned discussion of a problem common in legal practice, particularly for small firms and solo practitioners. Accordingly, the Court orders review of the decision on its own motion, adopts the hearing panel decision in its entirety as a final order of this Court, waives briefing and oral argument, and orders that the decision be published in the Vermont Reports.

STATE OF VERMONT

PROFESSIONAL RESPONSI-BILITY BOARD

In re: Richard A. Scholes, Esq.
PRB File Nos. 2011.006, 2011.053 and 2011.225

Decision No. *152*

The parties have filed a Stipulation of Facts, proposed Conclusions of Law and a Recommendation for Sanctions. The Respondent has waived certain procedural rights, including the right to an evidentiary hearing. The panel accepts the stipulated facts and recommendations and orders that Respondent be publicly reprimanded for substantial delays in handling three bankruptcy matters in violation of Rule 1.3 of the Vermont Rules of Professional Conduct. The misconduct occurred both prior to and subsequent to the amendment to the rules effective September 1, 2009. Rule 1.3 was not changed by the amendment.

**Facts**

Respondent was admitted to the Vermont Bar in 1991. He had practiced previously in Virginia, where he was admitted in 1972 and Georgia, where he was admitted in 1984. He is a sole practitioner and focuses almost exclusively on bankruptcy law. When he is retained by a bankruptcy client, he provides them with a blue folder with documents that explain the bankruptcy process as well as forms that the client must complete and a checklist of the documents that they must provide. Included in the blue folder are two copies of Respondent's written fee agreement in which Respondent quotes

each client legal fees and the fees and costs associated with the filing of a bankruptcy petition. Respondent allows his clients to make monthly payments towards the fee, but, as set forth in the fee agreement, he informs the client that he will not file the bankruptcy petition until the fee is paid in full.

## PRB File No. 2011.006

On October 26, 2006, Client A retained Respondent. She was given the blue folder, quoted a fee, and told that Respondent would file a bankruptcy petition when she had returned the appropriate paperwork and had paid her fee in full.

Client A paid over time, and by May of 2008, she had paid in full. On July 11, 2008, Client A called Respondent and asked if there was any new paperwork that she needed to complete. Respondent called Client A and left a message that she needed to provide additional paperwork, and he told her that he would send the paperwork to her together with a list of required documents.

In October of 2008, Client A returned the completed paperwork with many of the documents that Respondent had requested. In November of 2008, Respondent left Client A a message indicating that he just realized that she had paid in full.

In January of 2009, Client A sent Respondent a letter asking when her bankruptcy petition would be filed. She reminded respondent that she had paid in full and had provided the paperwork and documents which he had requested.

In February 2009 Client A received a letter from Respondent asking her to provide updated versions of several documents that she had already provided. She brought this paperwork to Respondent's office in March of 2009.

On April 20, 2009 Respondent left Client A a message indicating that he needed more current versions of the paperwork and documents that she had previously provided. She dropped the paperwork off at Respondent's office in June of 2009.

In October of 2009, Client A made an appointment to meet with Respondent to discuss her case. She arrived as scheduled, and he happened to be outside on his office porch at the time and told her that he could not discuss the case because he had the swine flu.

In December of 2009, Respondent called Client A and told her that he needed her most recent pay stub, which she dropped off at his office on December 30, 2009. This marked at least the third time that Client A had provided Respondent with her most recent pay stub.

Respondent filed Client A's bankruptcy petition in January of 2010. The meeting with the trustee was held on March 3, 2010, and in May of that year Client A received the final decree and discharge.

The period between Client A's having paid her fee in full and the filing of her bankruptcy petition was twenty months.

## PRB File No. 2011.053

In May of 2008, Client B met with Respondent to discuss filing for bankruptcy. Respondent quoted Client B a fee and provided him with the blue folder. Client B recalls being told that if he paid in full and returned the paperwork by July 1, 2008, the petition could be filed in October of that year.

At the time of Client B's first visit on May 20, 2008, Respondent told him that, due to his period of unemployment, he and his wife would pass the "means test" if they filed in July since their income was below the Vermont median for a family of their size. If they filed any later than that, Respondent would need additional information to complete the eight page "long form" means test. Since Respondent expected Client B to file in July, he did not include in their fee quote his usual $400.00 fee for completion of the "long form." That test requires a calculation of

all income received in the preceding six months.

In July of 2008, Client B had paid in full and had returned some of the paperwork and documents needed to prepare and file his bankruptcy petition but not all of them. Between June of 2008 and August of 2010, Client B made numerous calls to Respondent asking when the petition would be filed. Respondent provided Client B with different explanations for the delay, including a sick cat, sick wife and missing paperwork on several occasions, Respondent asked Client B for updated versions of paperwork and documents including Client B's "most recent pay stub," that Client B had previously sent to Respondent.

On August 31, 2010, Client B filed an ethics complaint against Respondent. After receiving notice of the complaint, Respondent contacted Client B to request updated versions of paperwork and documents that he had previously provided.

Respondent filed Client B's bankruptcy petition in January of 2011. A meeting with the trustee was held in March of that year, and in June the bankruptcy court discharged all of Client B's dischargeable debts. In May of 2011, Respondent filed motions to avoid liens. The orders granting the motions were entered in July of 2011 which Respondent sent to Client B in October of that year.

The time elapsed between Client B's having paid in full and the final action of the bankruptcy court was 32 months.

### PRB File No. 2011.225

In March of 2008, Clients C and D, husband and wife, hired Respondent to represent them in connection with a bankruptcy. He quoted them a fee and provided them with the blue paperwork folder. The clients paid over time, and by April of 2009, they paid in full and provided Respondent with some of the paperwork and documents necessary to file their bankruptcy petition.

Respondent called Clients C and D in April, July, September and October of 2009 to request additional documents. In late 2009 and early 2010 there were several instances when Respondent told Clients C and D that he had just about completed their petition and would send it for their review within a few days. In the fall of 2010, the clients began calling Respondent to request updates on the status of their case. In a letter to Client C dated September 27, 2010, Respondent wrote: "this is to confirm that you and Client D have paid your legal and filing fees in full. I expect we can meet to sign and file your bankruptcy petition within a week." This letter was sent by Respondent because Client C was being sued in small claims court and wanted a letter indicating that she would be filing for bankruptcy.

By April of 2011, Clients C and D had not heard from Respondent. They filed an ethics complaint on April 29, 2011. In May of 2011, after being notified of the complaint by Disciplinary Counsel, Respondent prepared a draft bankruptcy petition and sent it to Clients C and D.

The time elapsed between Clients C and D having paid in full and receiving the bankruptcy petition was 25 months.

Respondent caused all four clients to experience needless anxiety and stress.

### Conclusions of Law

Rule 1.3 of the Vermont Rules of Professional Conduct states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." This rule was unchanged by the 2009 amendments.

According to the comment to the 2009 amendment to this rule:

> Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time

or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed. Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness.

In each of these cases, Respondent failed to act with reasonable diligence and promptness upon being paid in full. The substantial delays in preparing and filing the bankruptcy petitions in these three cases violate this rule. With respect to Client A and Client B Respondent took 20 and 25 months respectively to prepare and file their petitions after they had paid in full. With Clients C and D it took 25 months to prepare the petition after they had paid in full.

Respondent is an experienced attorney. In mitigation, he has no disciplinary record, cooperated with disciplinary counsel, had no selfish or dishonest motive and expressed genuine remorse concerning his actions.

### Recommendation for Sanctions

We accept the recommendation of public reprimand. In cases of neglect where there is little or no injury and no other substantial violation, hearing panels have generally imposed either admonition or public reprimand. In making the determination between these two sanctions we are guided by the ABA Standards for Imposing Lawyer Sanctions and Vermont case law.

Lack of diligence is covered by § 4.4 of the ABA Standards. Both the reprimand and the admonition sections deals with negligent behavior. The difference between the two is in the scope of the injury. Admonition is recommended where there is "little or no actual or potential injury to

a client." ABA Standards § 4.44. Reprimand is recommended where there is "injury or potential injury to a client." ABA Standards § 4.43.

In distinguishing neglect cases in which admonition is imposed and those in which the sanction is public reprimand, hearing panels have looked at the number of clients involved, the duration of the neglect, the injury to the client and the aggravating and mitigating factors.

In these three cases, there does not appear to be any financial injury, but there is the very real anxiety felt by the clients who wanted to move their bankruptcy petitions to conclusion.

Here the neglect involved three separate clients and lasted for several years in one case. The neglect is similar to that in a recent case, *In re MaGill*, PRB Decision No. 148 (2012), in which the hearing panel approved a public reprimand. In *MaGill* the attorney neglected an estate for a period of six years. See also *In re Buckley*, PRB Decision No. 118 (2008), and *In re Farrar*, PRB Decision No. 82 (2005).

In contrast, admonition has generally been imposed where the delay was short and one or a very few client matters involved. In *In re PRB Decision No. 137* (2010), there was a delay of five months in issuing a title opinion.

Strong mitigating factors have also resulted in longer neglect being sanctioned by admonition. In *In re PRB Decision No. 137* (2011), the neglect was for a long period, but the attorney suffered from a medical problem and had decided to terminate his practice because it was affecting his health.

There are several mitigating factors in this case. Respondent has no prior discipline, ABA Standards § 9.32(a); he had no selfish or dishonest motive, ABA Standards § 9.32(b), and has expressed remorse for his conduct, ABA Standards § 9.32(l). In aggravation, he has substan-

tial experience in the practice of law, ABA Standards § 9.22(i).

Weighing the facts in this case against the ABA Standards and the prior Vermont decisions together with the aggravating and mitigating factors, we believe that the recommended sanction of public reprimand is appropriate.

### Order

Richard A. Scholes is hereby publicly reprimanded for violation of Rule 1.3 of the Vermont Rules of Professional Conduct.